UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Shenzhen Super Top Innovation Technology Limited, Shenzhen (CN), | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:24-cv-07649 |
| v. | ) ) | District Judge John J. Tharp |
| The Partnerships and Unincorporated Associations Identified on Schedule "A", | ) ) ) ) ) | Magistrate Judge Jeannice W. Appenteng |
| Defendants. | ) | |

**Amended Complaint**

**NOW COMES** Plaintiff, Shenzhen Super Top Innovation Technology Limited, Shenzhen (CN) ("Plaintiff"), by and through its undersigned counsel, and hereby brings this Complaint against the Partnerships and Unidentified Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:[1]

**Nature of the Action**

**1.** This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's intellectual property by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiff's utility patent and design patent ("Infringing Products"). Defendants create e-commerce stores operating under one or more aliases that are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products to unknowing consumers. E-commerce stores operating under the aliases share unique identifiers

---

[1] Plaintiff's name is being temporary withheld to prevent Defendants from obtaining advance notice and transferring funds/assets. Plaintiff is identified on the lawfully issued U.S. Patents filed under seal as Exhibit 1.

establishing a logical relationship between them, suggesting that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff has filed this action to combat Defendants' infringement of Plaintiff's utility patent and design patent, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiff has been and continues to be irreparably damaged from the loss of Plaintiff's lawful patent rights to exclude others from, inter alia, making, using, selling, offering for sale, and importing Plaintiff's patented designs as a result of Defendants' actions, and, as a result, Plaintiff seeks injunctive and monetary relief.

**Parties**

2. Plaintiff is a Chinese limited liability company, and is the listed owner of the Patents.

3. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff (collectively, "Seller Aliases"). On information and belief, Defendants reside and/or operate in the People's Republic of China, or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). On information and belief, Defendants either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their

network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338 (for claims arising under the U.S. Patent Act).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois and this judicial district, through at least the fully interactive, e-commerce stores[2] operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents (including residents in this judicial district) by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois and this judicial district, accept payment in U.S. dollars and, on information and belief, have offered to sell and/or sold products featuring Plaintiff's patented designs to residents of Illinois (including residents in this judicial district). Each of the Defendants is committing tortious acts within the United States (including in the State of Illinois and in this judicial district), is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois (including in this judicial district).

## Plaintiff's Business

6. Plaintiff is engaged in the design, distribution, marketing, offering for sale, and sale of various industrial designs and consumer products, including without limitation sofa shelf and tray table products ("Plaintiff Products").

---

[2] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

7.  The Plaintiff Products are distributed and sold to consumers throughout the United States, including in Illinois and in this judicial district.

8.  Plaintiff Products are known for their distinctive patented designs. Those patents and designs are broadly recognized by consumers. Products tailored after those patents and designs are associated with the quality and innovation that the public has come to expect from Plaintiff Products.

## Defendants' Unlawful Conduct

9.  Plaintiff has identified numerous fully interactive, ecommerce stores, including those operating under the Seller Aliases, which are or recently were offering for sale and/or selling Infringing Products to consumers in this judicial district and throughout the United States.

10. It has been estimated that e-commerce intellectual property infringement costs merchants in the U.S. alone nearly $41 billion[3] with Department of Homeland Security seizures of infringing goods increasing more than tenfold between 2000 and 2018.[4]

11. Marketplaces like Amazon, Temu, eBay, Walmart and Alibaba, among others, allow merchants to quickly "set up shop" and flood the market with unauthorized goods which displace actual sales that manufacturers would otherwise enjoy.

12. U.S. Customs and Border Protection ("CBP") reported that for Fiscal Year 2019, 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large cargo containers) and 85% of CBP seizures originated from

---

[3] The National Bureau of Asian Research, The Report of the Commission on the Theft of American Intellectual Property, at 9, Pub. The Commission on the Theft of American Intellectual Property 2017, available at http://www.ipcommission.org/report/IP_Commission_Report_Update_2017.pdf.
[4] U.S. Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, January 24, 2020, available at
https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.

mainland China, Singapore, and Hong Kong. Footwear and sporting goods, specifically, represented 17% of all seized products and the value of seized goods increased 11% to more than $1.5 billion.[5]

13. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by infringers.[6]

14. Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

15. Third party service providers like those used by Defendants do not adequately subject new sellers to robust verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[7]

16. DHS has observed that "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts.[8]

---

[5] U.S. Customs and Border Protection Office of Trade, Intellectual Property Rights Fiscal Year 2019 Seizure Statistics, available at, https://www.cbp.gov/sites/default/files/assets/documents/2020-Sep/FY%202019%20IPR%20Statistics%20Book%20%28Final%29.pdf.
[6] Press Release, U.S. Senator Thom Tillis, Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses (Dec. 5, 2019), available at https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislationto-seize-counterfeit-products-and-protect-american-consumers-and-businesses.
[7] Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).
[8] *Combating Trafficking in Counterfeit and Pirated Goods Report to the President of the United States*, at p. 22.

17. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated.[9]

18. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]."[10]

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores which target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois and this judicial district, accept payment in U.S. dollars and, on information and belief, have offered to sell or sold Infringing Products to residents of Illinois and this judicial district.

20. Defendants collectively employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images which make it very difficult for consumers to distinguish such stores from those of an authorized retailer. Plaintiff has not licensed or authorized Defendants to use the utility patents and design patents owned by Plaintiff and, on information and belief, none of the Defendants are authorized retailers of genuine Plaintiff Products.

21. On information and belief, Defendants engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to

---

[9] Id., at p. 39.
[10] *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. At 186-187.

their respective e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

22. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being halted.

23. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and product imagery.

24. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized, suggesting that the Infringing Products were manufactured by and come from a common source - or at most two sources - and that Defendants are interrelated and acting in concert.

25. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com and WeChat chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore bank accounts outside the jurisdiction of this Court and will do so to avoid payment of any monetary judgment awarded to Plaintiff by this Court.

27. On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the utility patents and design patents owned by Plaintiff. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Illinois, including this judicial district, and, on information and belief, each Defendant has offered to sell or sold Infringing Products into the United States and Illinois, including this judicial district, over the Internet.

28. Defendants' infringement of the utility patent and design patent owned by Plaintiff. the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products was willful.

29. Defendants' infringement of the utility patent and design patent owned by Plaintiff in connection with the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the Infringing Products, including the making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of Infringing Products into Illinois, including this judicial district, is irreparably harming Plaintiff.

**Count I - Patent Infringement (35 U.S.C. § 271)**

**30.** Plaintiff repeats and realleges the allegations of Paragraphs 1-30 as if fully set forth herein.

**31.** Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use Infringing Products that infringe directly and/or indirectly the utility patents and design patents owned by Plaintiff.

**32.** Defendants have infringed the utility patents and design patents owned by Plaintiff through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of Plaintiff's lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**33.** Plaintiff is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

**A.** That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

    **a.** making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff and that include any reproduction, copy, or colorable imitation of the designs claimed in the Plaintiff Design;

  **b.** aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the utility patents and design patents owned by Plaintiff; and

  **c.** effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b) above.

 **B.** Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, Temu, eBay, Walmart and Alibaba (collectively, "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe the ornamental designs claimed in the Plaintiff Design;

 **C.** That Plaintiff be awarded such damages as Plaintiff shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the utility patent and design patent owned by Plaintiff, but in no event less than a reasonable royalty for the use made of the inventions by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

 **D.** That the amount of damages awarded to Plaintiff to compensate it for infringement of the utility patent and design patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

 **E.** In the alternative, that Plaintiff be awarded all profits realized by Defendants from their infringement of the utility patent and design patent, pursuant to 35 U.S.C. § 289;

 **F.** That Plaintiff be awarded Plaintiff's reasonable attorneys' fees and costs; and

 **G.** Award any and all other relief that this Court deems just and proper.

Dated: August 29, 2024

Respectfully submitted,

/s/Zhiwei Hua
1360 Valley Vista Dr, Suite 140,
Diamond Bar CA 91765
Bar No. 6099105
huazhiwei@concordsage.com
Phone: (216)3923236

*Counsel for Plaintiff*